## FLANEGAN vs. GARRISON AND WIFE.

1 If the defendant claims title under the complainant, he has the right to show that title was in the complainant, if he can.

2 A guardian had a bastard child by his ward, and she agreed with him to settle a part of her property on the child. *Held*, that the agreement was not one which was void *per se*.

In Equity, from Polk superior court. Tried before Judge HAMMOND, at April Term, 1858.

This was a bill in equity filed by Baxter M. Garrison and Dorcas M., his wife, against Joel L. Flanegan, for an account and settlement of the estate of Mrs. Garrison, formerly Dorcas M. Sausing, former ward of defendant.

The bill alleges that Benj. Sausing, deceased, father of said Dorcas, died in the year 1848; that defendant became her guardian, she being a minor, and received from the administrator of her father her distributive share of his estate; besides a negro woman named Emiline belonging to her.

The prayer of the bill is for an account of said estate, and the profits and hire of the woman Emiline, &c.

Defendant in his answer admits that he was the guardian of Mrs. Garrison, during her minority; but he states that she had an illegitimate child, of which defendant was father, and by agreement with her, ratified and confirmed by her after she became of age, he sold the woman Emiline and children for $1500, one half of which was to belong to said illegitimate child, and the other half to said Dorcas; that said woman was bequeathed to her by her father and to the issue of her body; and that said illegitimate is the only child of said Dorcas, nor is she likely to have any other. The answer submits that defendant holds said sum of $1500 under said agreement, one half for his illegitimate son, for whom he has been appointed guardian; the other half he is ready and willing to account for and pay over to complainants, &c.

The case was heard upon the bill and answer and proofs. After complainants closed, defendant offered in evidence the last will and testament of Benj. Sausing, deceased, to show the nature of complainant's title to the negro woman, and the proceeds of her sale. Complainants objected to this

testimony as irrelevant and illegal.   The court sustained the objection, and defendant excepted.

Defendant then proposed to prove the agreement between himself and said Dorcas, made while she was under the age of twenty-one years, but ratified after she attained majority, in relation to the woman Emiline and the proceeds of her sale.

Complainants objected to this evidence.   The court sustained the objection and excluded the testimony, on the ground that a contract of that kind between guardian and ward was void *per se;* and that no subsequent ratification or confirmation would give it force or validity.   To which ruling defendant excepted.

The jury found for complainants twenty-four hundred and fifty-eight dollars.

Whereupon counsel for defendant moved for a new trial, on the grounds of error in the aforesaid decisions and charge of the court, and that the verdict was contrary to law and the evidence.

The court overruled the motion for a new trial, and defendent excepted.

FIELDER & BROYLES and IRWIN & LESTER, for plaintiff in error.

CHISOLM & WADDEL and H. BUCHANAN, *contra.*

*By the Court.*—BENNING, J., delivering the opinion.

Was the court right in excluding from the jury the will of Benjamin Sausing?   We think not.   The will showed title in Dorcas Sausing, one of the complainants, she having become the wife of Baxter M. Garrison, the other complainant; and Flanegan claimed under her.   It was, therefore, a part of the case he had to make out, to show title in her.

. Flanegan vs. Garrison and Wife.

Was the court right in rejecting the evidence offered by Flanegan, to prove the agreement between him and Dorcas Sausing, by which she was to settle one half of her property that was in dispute, (provided he recovered it for her,) on her son, Joel, of whom Flanegan was the illegitimate father; and to prove that she ratified the agreement two years after she became twenty-one years old? We think not. The ground upon which the rejection of this evidence was put was, that "a contract of that nature, made between guardian and ward," was "void *per se;* and that no subsequent contract or agreement could give it validity."

Was the court right in this view? We think not. It is a question, whether any contract between guardian and ward is, *per se,* void. What law is there that puts guardian and ward, even as it respects each other, among the persons who are incompetent to contract? But certainly it is not true, that there can be no valid contracts between them. And if there can be any, why not this be one? This was a contract which conferred no benefit on the guardian, the mother being able to support the illegitimate child; a contract by which the ward, this mother, made a provision for her own child, and thereby performed a double duty; a duty to the child and to the public. She was bound to support the child, and the contract may be considered as merely making provision for his support. We cannot regard such a contract as this void, *per se.*

It is useless to consider the other grounds.

New trial granted.